EILEEN M. DECKER
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. AHN (Cal. Bar No. 235023)
Assistant United States Attorneys
        8000 United States Courthouse
        411 West Fourth Street
        Santa Ana, California 92701
        Telephone:  (714) 338-3535/3539
        Facsimile:  (714) 338-3523/3561
        Email:      greg.staples@usdoj.gov
                    daniel.ahn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                 UNITED STATES DISTRICT COURT

               CENTRAL DISTRICT OF CALIFORNIA

                      SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>         v.<br><br>LOUIS JOSEPH VADINO,<br><br>              Defendant. | Case No. SA CR 12-128-AG<br><br>GOVERNMENT'S TRIAL BRIEF<br><br>TRIAL DATE<br><br>DATE:      October 11, 2016<br>TIME:      9:00 a.m.<br>PLACE:     Courtroom of the Hon.<br>           Andrew J. Guilford |

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES...........................................iii

I.    INDICTMENT.................................................1

II.   STATEMENT OF THE CHARGES..................................1

      A.   Count One: Evasion of Payment of Taxes.............2

      B.   Count Two: False Statements........................2

      C.   Count Eight: Aggravated Identity Theft.............3

III.  SUBSTANTIVE LAW...........................................3

      A.   Count One: Evasion of Payment of Taxes.............3

      B.   Count Two: False Statements........................4

      C.   County Eight: Aggravated Identity Theft............5

IV.   CASE ESTIMATES............................................6

V.    EVIDENTIARY ISSUES........................................6

      A.   Evidence of Defendant's Flight.....................6

      B.   Defendant's Prior Statements.......................7

      C.   Testimony from Defendant's Ex-Wife and
           Ex-Girlfriend......................................9

      D.   Expert Witnesses..................................10

           1.   Applicable Law...............................10

           2.   IRS Revenue Agent Jean Pugh..................10

      E.   Documents.........................................11

           1.   Authentication and Identification............11

           2.   Summary Charts...............................12

           3.   Public Records...............................13

           4.   Negotiable Instruments.......................13

           5.   Foreign Bank Documents.......................13

<u>TABLE OF CONTENTS</u> – (continued)

                                                                    PAGE

          a.   The Bank Records Are Admissible
               Under Rule 807...............................14

          b.   The Bank Records Are Admissible
               Under Rule 901...............................17

     F.   Cross-Examination of Defendant......................18

     G.   Cross-Examination of Any Character
          Witnesses..........................................20

VI.  MOTIONS................................................20

VII. CONCLUSION.............................................22

TABLE OF AUTHORITIES

PAGE

<u>FEDERAL CASES</u>

<u>Arnold v. Groose</u>,
    109 F.3d 1292 (8th Cir. 1997) ...............................9

<u>Barsky v. United States</u>,
    339 F.2d 180 (9th Cir. 1964) ..............................12

<u>FTC v. Figgie Int'l</u>,
    994 F.2d 595 (9th Cir. 1993) ..............................15

<u>Ins. Co. of N. Am. v. Thompson</u>,
    381 F.2d 677 (9th Cir. 1967) ...............................9

<u>Larez v. City of Los Angeles</u>,
    946 F.2d 630 (9th Cir. 1991) ..............................15

<u>Las Vegas Sands, LLC v. Nehme</u>,
    632 F.3d 526 (9th Cir. 2011) ..............................17

<u>Michelson v. United States</u>,
    335 U.S. 469 (1948) .......................................20

<u>Olender v. United States</u>,
    237 F.2d 859 (9th Cir. 1956) ...............................4

<u>Orr v. Bank of Am.</u>,
    285 F.3d 764 (9th Cir. 2002) ..............................17

<u>Sansone v. United States</u>,
    380 U.S. 343 (1965) ........................................4

<u>Tatum v. Tatum</u>,
    241 F.2d 401 (9th Cir. 1957) ..............................10

<u>Williamson v. United States</u>,
    512 U.S. 594 (1994) ........................................8

<u>United States v. Anderson</u>,
    813 F.2d 1450 (9th Cir. 1987) .............................10

<u>United States v. Bender</u>,
    606 F.2d 897 (9th Cir. 1979) ...............................4

<u>United States v. Black</u>,
    767 F.2d 1334 (9th Cir. 1985) .........................12, 19

<u>United States v. Branch</u>,
    91 F.3d 699 (5th Cir. 1996) ................................8

TABLE OF AUTHORITIES – (continued)

PAGE

United States v. Buckner,
     610 F.2d 570 (9th Cir. 1979) ................................4

United States v. Burdick,
     221 F.2d 932 (3d Cir. 1955) ..............................21

United States v. Burreson,
     643 F.2d 1344 (9th Cir. 1981) ..............................8

United States v. Carlson,
     235 F.3d 466 (9th Cir. 2000) ...............................4

United States v. Chu Kong Yin,
     935 F.2d 990 (9th Cir. 1991) ..............................12

United States v. Citron,
     783 F.2d 307 (2d Cir. 1986) ..............................21

United States v. Collicott,
     92 F.3d 973 (9th Cir. 1996) ................................8

United States v. Cunningham,
     194 F.3d 1186 (11th Cir. 1999) .............................7

United States v. Fernandez,
     839 F.2d 639 (9th Cir. 1988) ...............................7

United States v. Gay,
     967 F.2d 322 (9th Cir. 1992) ..............................19

United States v. Hearst,
     563 F.2d 1331 (9th Cir. 1977) .............................19

United States v. Hedcorth,
     873 F.2d 1307 (9th Cir. 1989) .............................20

United States v. Hernandez-Miranda,
     601 F.2d 1104 (9th Cir. 1979) ..............................6

United States v. Johnson,
     319 U.S. 503 (1943) ......................................21

United States v. Johnson,
     594 F.2d 1253 (9th Cir. 1979) .............................12

United States v. Kayser,
     488 F.3d 1070 (9th Cir. 2007) ..............................4

United States v. Marashi,
     913 F.2d 724 (9th Cir. 1990) ............................4, 9

iv

<u>TABLE OF AUTHORITIES</u> – (continued)

PAGE

United States v. Marin,
    669 F.2d 73 (2d Cir. 1982) ..................................8

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981) ...............................20

United States v. Mehrmanesh,
    682 F.2d 1303 (9th Cir. 1982) .............................19

United States v. Meling,
    47 F.3d 1546 (9th Cir. 1995) ...............................6

United States v. Mende,
    43 F.3d 1298 (9th Cir. 1995) ...............................7

United States v. Meyers,
    847 F.2d 1408 (9th Cir. 1988) .............................12

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981) .............................19

United States v. Moran,
    759 F.2d 777 (9th Cir. 1985) ..............................13

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000) ............................7, 8

United States v. Pang,
    362 F.3d 1187 (9th Cir. 2004) .............................13

United States v. Poschwatta,
    829 F.2d 1477 (9th Cir. 1987) .............................13

United States v. Radseck,
    718 F.2d 233 (7th Cir. 1983) ..............................12

United States v. Schoppert,
    362 F.3d 451 (8th Cir. 2004) ...............................4

United States v. Silkman,
    220 F.3d 935 (8th Cir. 2000) ...............................4

United States v. Smith,
    893 F.2d 1573 (9th Cir. 1990) .............................11

United States v. Soulard,
    730 F.2d 1292 (9th Cir. 1984) .............................12

United States v. Valdez-Soto,
    31 F.3d 1467 (9th Cir. 1994) ..............................15

TABLE OF AUTHORITIES – (continued)

PAGE

United States v. Voorhies,
    658 F.2d 710 (9th Cir. 1981) ...........................4, 21

United States v. Wales,
    977 F.2d 1323 (9th Cir. 1992) .............................7

United States v. Willis,
    759 F.2d 1486 (11th Cir. 1985) ...........................8

FEDERAL STATUTES

18 U.S.C. § 65 (2012) ...................................... 10

18 U.S.C. § 371 (2012) ...................................... 1

18 U.S.C. § 1001(a) (2012) ............................... 1, 5

18 U.S.C. § 1028A (2012) ................................. 1, 5

18 U.S.C. § 1542 (2012) ................................ 1, 5-6

18 U.S.C. § 3146(a)(1) (2012) ............................... 1

26 U.S.C. § 7201 (2012) ............................... 1, 3, 21

STATE STATUTES

Cal. Fam. Code § 300 ...................................... 10

FEDERAL RULES

Fed. R. Crim. P. 16 ....................................... 11

Fed. R. Evid. 106 .......................................... 8

Fed. R. Evid. 401 .......................................... 6

Fed. R. Evid. 403 .......................................... 7

Fed. R. Evid. 404(b) ....................................... 6

Fed. R. Evid. 405(a) ...................................... 20

Fed. R. Evid. 611(a) ...................................... 13

<u>TABLE OF AUTHORITIES</u> – (continued)

PAGE

Fed. R. Evid. 611(b) ........................................ 18

Fed. R. Evid. 702 ...................................... 10, 11

Fed. R. Evid. 703 ........................................... 10

Fed. R. Evid. 704 ........................................... 10

Fed. R. Evid. 801(d)(2) ...................................... 8

Fed. R. Evid. 801(d)(2)(A) .............................. 7, 13

Fed. R. Evid. 807 ........................................... 14

Fed. R. Evid. 901 ........................................... 17

Fed. R. Evid. 901(a) ........................................ 11

Fed. R. Evid. 902(1) ........................................ 13

Fed. R. Evid. 1003 .......................................... 11

Fed. R. Evid. 1006 .......................................... 12

<u>SECONDARY SOURCES</u>

32 Cal. Jur. 3d <u>Family Law</u>................................. 10

## I.  INDICTMENT

The first superseding indictment was filed on February 11, 2015. It charges defendant Louis Joseph Vadino ("defendant") with tax evasion under 26 U.S.C. § 7201; false statement under 18 U.S.C. § 1001(a); failure to appear under 18 U.S.C. § 3146(a)(1); conspiracy under 18 U.S.C. § 371; two counts of passport fraud under 18 U.S.C. § 1542; and two counts of aggravated identity theft under 18 U.S.C. § 1028A.

On October 3, 2016, defendant pleaded guilty, without a written plea agreement, to the following: failure to appear under 18 U.S.C. § 3146(a)(1); conspiracy under 18 U.S.C. § 371; two counts of passport fraud under 18 U.S.C. § 1542; and one count of aggravated identity theft under 18 U.S.C. § 1028A.

Thus, at trial, the remaining charges include tax evasion, making a false statement, and aggravated identity theft.

## II.  STATEMENT OF THE CHARGES

Defendant was a resident of Ramona, California, and previously a resident of Lake Forest, California.  In late 2002, defendant signed and filed a 1999, 2000, and 2001 U.S. Individual Income Tax Return (Form 1040) in the name of Louis J. Vadino with the IRS, which included as dividend income distributions from Ambrite Properties Ltd., an offshore entity that defendant created and controlled.

From 2002 through April 27, 2006, the IRS was actively attempting to audit and assess the tax due and owing for defendant; and on April 27, 2006, the IRS sent defendant a notice that assessed additional taxes due and owing by defendant for the 1999 tax year.

From 1999 through 2002, defendant purchased five residential properties in Lake Forest, California, with all the homes titled

1

under Ambright Ltd.  Defendant, his three adult daughters, and his mother, resided in each of the homes.

In the fall of 2006, defendant caused and directed his daughter to obtain refinance loans on three of the Lake Forest properties, for $500,000 each, and sold a fourth Lake Forest property for over $600,000, and defendant caused the approximately $2.1 million in loan and sale proceeds to be wire transferred to a bank account in Greece that defendant controlled.

## A.    **Count One: Evasion of Payment of Taxes**

From 2006 to 2011, defendant took steps to evade the 1999 tax assessment.  These affirmative acts include: defendant concealing and attempting to conceal from the IRS the nature and extent of his assets and the location thereof, making false statements to agents of the IRS, placing funds and property in the names of nominees, and using offshore accounts to place funds and property beyond the reach of process.

## B.    **Count Two: False Statements**

On May 26, 2011, defendant made false statements to Special Agents with IRS's Criminal Investigation Division, including:

Defendant claimed he did not have any money to pay his outstanding tax liabilities when the IRS first notified him in April 2006 and has not had any money to pay his taxes at any time since.

Defendant maintained he never owned or controlled any real property either personally or indirectly through a corporation or a nominee, neither at the time when the IRS first notified him of his outstanding tax liabilities in April 2006 nor at any time since.

Defendant claimed that he did not receive any financial benefit from the refinancing of the Lake Forest properties in his daughter's

2

name, and that all the money went toward Greek investment
opportunities.

C. **Count Eight: Aggravated Identity Theft**

Defendant was scheduled to go to trial on the above-described
offenses in 2013.  At that time, defendant was out of custody on bail
pending trial but subject to electronic monitoring.  Rather than
appear for trial, defendant cut off his electronic monitoring anklet
and absconded.

In October 2014, while a fugitive, defendant applied for a U.S.
passport using information defendant knew to be false.  Defendant
also knew that this personal identifying information belonged to a
real person.

### III.   SUBSTANTIVE LAW

A. **Count One: Evasion of Payment of Taxes**

For defendant to be found guilty of evading payment of income
tax in violation of 26 U.S.C. § 7201, the government must prove each
of the following elements beyond a reasonable doubt:

First, the defendant owed more federal income tax for the
calendar year 1999 than he paid in taxes for that calendar year;

Second, the defendant knew that more federal income tax was owed
than was paid;

Third, the defendant made an affirmative attempt to evade or
defeat such additional tax; and

Fourth, in attempting to evade or defeat such additional tax,
the defendant acted willfully.

Source: Ninth Circuit Model Instruction 9.37 (2010 ed.) (modified).

The model instruction states that the tax due and owing is the
amount of tax liability in excess of the amount declared on the

1  return.   That is true in evasion-of-assessment cases such as United

2  States v. Kayser, 488 F.3d 1070 (9th Cir. 2007), in which the

3  defendant misleads the IRS (as by filing a false return) to impede

4  the IRS's ability to determine what taxes are owed.   It is not true

5  in an evasion-of-payment case such as this one, where the IRS has

6  already determined what the defendant's tax liability is, and the

7  defendant misleads the IRS to impede the IRS's ability to collect

8  that tax.   In such cases, the "tax due and owing" equals the amount

9  of tax owed minus the amount of tax paid.   See Sansone v. United

10  States, 380 U.S. 343, 352-54 (1965); United States v. Carlson, 235

11  F.3d 466, 468-69 (9th Cir. 2000); United States v. Voorhies, 658 F.2d

12  710, 713-14 (9th Cir. 1981); United States v. Schoppert, 362 F.3d

13  451, 454 (8th Cir. 2004); United States v. Silkman, 220 F.3d 935, 937

14  (8th Cir. 2000).

15       The government also notes that it need not prove the exact

16  amount of the tax due and owing.   Nor must the government prove that

17  the amount is substantial.   The government need only establish that

18  there was some amount of tax due and owing for tax year 1999.   United

19  States v. Marashi, 913 F.2d 724, 735-36 (9th Cir. 1990); United

20  States v. Bender, 606 F.2d 897, 898 (9th Cir. 1979); United States v.

21  Buckner, 610 F.2d 570, 573-74 (9th Cir. 1979); Olender v. United

22  States, 237 F.2d 859, 867 (9th Cir. 1956); Ninth Circuit Model

23  Instruction 9.37, Commentary (2010 ed.).

24  B.   **Count Two: False Statements**

25       For defendant to be found guilty of knowingly and willfully

26  making a materially false, fictitious, and fraudulent statement and

27  representation on May 26, 2011 to Special Agents of the IRS, in

28

violation of 18 U.S.C. § 1001(a), the government must prove each of the following elements beyond a reasonable doubt:

First, defendant made a false, fictitious, or fraudulent statement or representation in a matter within the jurisdiction of the IRS;

Second, defendant acted willfully, that is, deliberately and with knowledge that the statement or representation was untrue; and

Third, the statement or representation was material to the activities or decisions of the IRS; that is, it had a natural tendency to influence or was capable of influencing, the agency's decisions or activities.

<u>Source</u>: Ninth Circuit Model Instruction 8.73 (2010 ed.).

For defendant to make a false statement willfully, he must have the specific intent to make a false statement.  Specific intent does not require evil intent but only that the defendant act deliberately and with knowledge.

**C.    Count Eight: Aggravated Identity Theft**

For defendant to be found guilty of aggravated identity theft in violation of 18 U.S.C. § 1028A, the government must prove each of the following elements beyond a reasonable doubt:

First, defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person;

Second, defendant knew that the means of identification belonged to a real person; and

Third, defendant did so during and in relation to the making of a false statement in a passport application, a felony violation of 18

U.S.C. § 1542, namely, the offense charged in count six of the first superseding indictment.

Source: Ninth Circuit Model Instruction 8.83 (2010 ed.).

## IV.   CASE ESTIMATES

The government expects to call approximately 11 to 17 witnesses in its case-in-chief.  The government estimates that its case-in-chief will take five to seven days.  This estimate necessarily depends on certain assumptions regarding the extent of defendant's cross-examinations.

## V.   EVIDENTIARY ISSUES

### A.   Evidence of Defendant's Flight

The government intends to offer evidence as to defendant's failure to appear at his first trial, his flight, and his arrest, as well as those things that he had with him when he was arrested.  Such evidence is highly relevant under Federal Rule of Evidence 401, because it shows consciousness of guilt.  As the Ninth Circuit has observed, evidence that "shows consciousness of guilty" – such as defendant's flight before trial – is "second only to a confession in terms of probative value."  United States v. Meling, 47 F.3d 1546, 1557 (9th Cir. 1995); United States v. Hernandez-Miranda, 601 F.2d 1104, 1107 (9th Cir. 1979) ("Flight immediately after the commission of a crime, or immediately prior to trial, both support an inference of consciousness of guilt.").

Separately, this flight evidence is admissible under Federal Rule of Evidence 404(b), because it goes to defendant's knowledge and shows his consciousness of guilty.  That the flight took place after he was first arrested on tax evasion is irrelevant.  In the Ninth Circuit, "Rule 404(b) applies to other act evidence regardless of

1    whether it occurred before or after the alleged offense." <u>United</u>
2    <u>States v. Wales</u>, 977 F.2d 1323, 1326 (9th Cir. 1992).

3        Nor is Federal Rule of Evidence 403 an impediment.  "Rule 403
4    . . . is an extraordinary remedy to be used sparingly." <u>United</u>
5    <u>States v. Mende</u>, 43 F.3d 1298, 1302 (9th Cir. 1995).  Here, the
6    probative value of the flight evidence is exceedingly high; and while
7    it is prejudicial – as all strong evidence is – it is not unfairly
8    prejudicial.

9    **B.   <u>Defendant's Prior Statements</u>**

10       The government intends to introduce testimony regarding certain
11   statements that defendant made in IRS filings, emails, letters, a
12   deposition, phone calls, and other modes of communication.

13       Under the Federal Rules of Evidence, a defendant's statement is
14   admissible only if offered against him; a defendant may not elicit
15   his own prior statements.  <u>See</u> Fed. R. Evid. 801(d)(2)(A); <u>United</u>
16   <u>States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1988).  To permit
17   otherwise would place a defendant's statements "before the jury
18   without subjecting himself to cross-examination, precisely what the
19   hearsay rule forbids." <u>United States v. Ortega</u>, 203 F.3d 675, 682
20   (9th Cir. 2000) (district court properly barred defendant from
21   seeking to introduce certain post-arrest statements through cross-
22   examination of INS agent); <u>United States v. Cunningham</u>, 194 F.3d
23   1186, 1199 (11th Cir. 1999) ("a defendant cannot attempt to introduce
24   an exculpatory statement made at the time of his arrest without
25   subjecting himself to cross examination").

26       When the government admits some of a defendant's prior
27   statements, the door is not thereby opened to the defendant to put in
28   all of his out-of-court statements, because when offered by the

1   defendant, the statements are hearsay.  _See_ Fed. R. Evid. 801(d)(2);

2   _United States v. Burreson_, 643 F.2d 1344, 1349 (9th Cir. 1981);

3   _United States v. Willis_, 759 F.2d 1486, 1501 (11th Cir. 1985)

4   (defendant's exculpatory statement inadmissible when offered by

5   defense).

6        Similarly, a defendant's exculpatory statements are not

7   admissible under Federal Rule of Evidence 106 – the "rule of

8   completeness."  Evidence that is inadmissible is not made admissible

9   by invocation of the "rule of completeness."  _See_ _United States v._

10  _Collicott_, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admissible

11  regardless of Rule 106).  As the Ninth Circuit noted in _Ortega_, a

12  defendant's non-self-inculpatory statements are inadmissible hearsay

13  even if they were made contemporaneously with other self-inculpatory

14  statements.  _Ortega_, 203 F.3d at 682 (citing _Williamson v. United_

15  _States_, 512 U.S. 594, 599 (1994)).

16       The "rule of completeness" may require that a defendant's prior

17  statements be admitted where they are necessary to explain an

18  admitted statement, to place it in context, or to avoid misleading

19  the trier of fact.  _See, e.g._, _United States v. Marin_, 669 F.2d 73,

20  84 (2d Cir. 1982).  The doctrine does not, however, require

21  introduction of portions of a statement that are neither explanatory

22  of, nor relevant to, the admitted passages.  _See_ _Ortega_, 203 F.3d at

23  682-83; _Marin_, 669 F.2d at 84.  The burden is on the defendant to

24  identify a basis for admitting the additional portions of the

25  defendant's prior statement.  _United States v. Branch_, 91 F.3d 699,

26  729 (5th Cir. 1996).

27       In addition, declarations filed by the defendant in a separate

28  matter qualify as non hearsay party-opponent admissions under Rule

8

801(d)(2) as long as they are offered by the government against the defendant.  <u>See</u> <u>Ins. Co. of N. Am. v. Thompson</u>, 381 F.2d 677, 679 (9th Cir. 1967) (earlier complaint filed by plaintiff before Idaho Industrial Accident Board was admissible as admission by party-opponent when offered by defendant at trial in a civil case); <u>see also</u> <u>Arnold v. Groose</u>, 109 F.3d 1292, 1296-97 (8th Cir. 1997) (holding that prisoner's pleadings from an earlier § 1983 suit against prison officials constituted non-hearsay admissions by party-opponent when introduced in a later § 1983 suit).

**C.  <u>Testimony from Defendant's Ex-Wife and Ex-Girlfriend</u>**

The government expects to call defendant's ex-wife and ex-girlfriend.

As to the ex-wife, there are "two separate privileges arising out of the marital relationship.  The first, which [the Ninth Circuit has] called the 'anti-marital facts' privilege, prohibits one spouse from testifying against another <u>during the length of the marriage</u>." <u>Marashi</u>, 913 F.2d at 729 (emphasis added).  This privilege does not apply here.

"The second, so-called 'marital communications' privilege, bars testimony concerning statements privately communicated between spouses.  The non-testifying spouse may invoke the privilege even after dissolution of the marriage." <u>Id.</u>  However, "the privilege extends only to words or acts intended as communication to the other spouse." <u>Id.</u>  Here, the ex-wife is expected to testify about things she saw and acts performed.  That information came to her attention, not through "words or acts intended as communication to the other

spouse," but through simple observation of tangible things.   Thus, the marital-communications privilege does not apply.

As to the ex-girlfriend, because she and defendant were not married, no spousal privilege applies.   Defendant may intend to argue that they were in a common-law marriage by virtue of the fact that they lived together for some period of time in California.   But "mere cohabitation is insufficient to establish a common-law marriage."   32 Cal. Jur. 3d Family Law § 65.   Moreover, it appears that California does not recognize common-law marriages (unless the common-law marriage was effectuated in a state that does recognize such marriages).   Cal. Fam. Code § 300; Tatum v. Tatum, 241 F.2d 401, 407 (9th Cir. 1957).

**D.    Expert Witnesses**

**1.    Applicable Law**

If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.   Fed. R. Evid. 702.   An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field.   Fed. R. Evid. 703.   An expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact.   Fed. R. Evid. 704.

The Court has broad discretion to determine whether to admit expert testimony.   United States v. Anderson, 813 F.2d 1450, 1458 (9th Cir. 1987).

**2.    IRS Revenue Agent Jean Pugh**

The government expects to call IRS Revenue Agent Jean Pugh.   She

will be called as a percipient witness and may also be called as an expert witness.  Ms. Pugh is an IRS employee who, in accordance with her official duties, reviewed various evidence as to defendant's economic activity in 1999 and later tax years, the tax returns he filed for some of those years, and other representations he made to the IRS during that period.  She also assessed his taxable income and tax due for 1999.  Further, she was involved in defendant's appeal of the assessment, which ended in defendant's stipulation to the validity of the assessment.  She will testify, based on her personal knowledge, as to the steps she took, evidence she considered, and the conclusions she reached.

To the extent that any of Ms. Pugh's testimony constitutes expert opinion testimony under Federal Rule of Criminal Procedure 16 or Federal Rule of Evidence 702 to 704, the government provided notification to defendant of Ms. Pugh's expected testimony.

**E.    Documents**

The government expects to offer a number of documents into evidence.  Most if not all will be duplicates.  A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under the circumstances, it would be unfair to admit the duplicate instead of the original.  Fed. R. Evid. 1003; see also United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

**1.    Authentication and Identification**

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).

Rule 901(a) requires the government to make only a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." See United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991).  Once the government meets this burden, "the credibility or probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985).

### 2.   Summary Charts

The government intends to introduce summary charts through IRS Special Agent Lizandro Lopez.  The charts summarize voluminous records in this case, including bank and loan documents.  The government has disclosed a copy of the charts to defendant's counsel. Moreover, the documents upon which the chart will be based have been provided to the defense in discovery.

The summary chart is properly admissible under Federal Rule of Evidence 1006.  See United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988) (underlying documents are to be "admissible," but need not be "admitted"); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th Cir. 1979).

The use of other persons, if any, in the preparation of summary charts goes to its weight, not its admissibility.  United States v. Soulard, 730 F.2d 1292, 1299 (9th Cir. 1984).  Summary charts need not contain the defendant's version of the evidence and may be given to the jury while a government witness testifies concerning them. See Barsky v. United States, 339 F.2d 180, 181 (9th Cir. 1964); United States v. Radseck, 718 F.2d 233, 239 (7th Cir. 1983).

In addition, summary charts that are not offered as evidence under Rule 1006 may still be presented to the jury during trial

pursuant to Federal Rule of Evidence 611(a), which permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." United States v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir. 1987).

### 3.   Public Records

The government intends to offer certain public records relating to defendant that have been filed with the IRS, courts, and other agencies.  Domestic public documents under seal or certified copies of public records do not require extrinsic evidence of authenticity as a condition precedent to admissibility.  See Fed. R. Evid. 902(1).

### 4.   Negotiable Instruments

Documents prepared by, or on behalf of, a defendant that he signed are express admissions of a party-opponent and admissible under Federal Rule of Evidence 801(d)(2)(A).  See United States v. Moran, 759 F.2d 777, 786 (9th Cir. 1985) (holding that letters and deposit slips signed by defendant are express admissions).

Separately, out-of-court statements that are offered as evidence of legally-operative verbal conduct are not hearsay.  See United States v. Pang, 362 F.3d 1187, 1192 (9th Cir. 2004).  For example, checks and other negotiable instruments are not hearsay because they are commercial events that create legal rights and obligations.  Id.

### 5.   Foreign Bank Documents

As noted, defendant is charged with willfully evading payment of taxes and making false statements to government investigators.  The government alleges that as part of his tax evasion scheme, in September and October 2006, defendant caused his daughter to refinance several homes in Lake Forest and sell another, and then defendant caused the $2.1 million in loan and sale proceeds to be

13

1   wire transferred to an account at Marfin Bank in Greece that

2   defendant controlled.  Defendant then opened an account in the name

3   of S&L Development SA at Aspis Bank in Greece, and transferred over a

4   million dollars from the Marfin account to the Aspis account.

5   Throughout the first half of 2007, defendant had over a million

6   dollars wire transferred from the Aspis account to accounts at

7   Washington Mutual and Wells Fargo in the name of his then-girlfriend,

8   S.M., who used the funds to purchase a property in Ramona, California

9   in the name of S&L Development.

10       The government further charges that on May 26, 2011, defendant

11  made false statements to IRS criminal investigators, claiming he had

12  no assets in 2006, he did not own or control real property through a

13  corporation or nominee, and he did not benefit from the 2006

14  refinancings.

15       The Greek authorities provided Marfin and Aspis bank records to

16  the U.S. government pursuant to an international tax treaty.  The

17  government intends to offer these foreign bank records as evidence.

18  Federal Rules of Evidence 807 and 901 provide the Court with

19  substantial leeway to deem the records authentic and admissible,

20  based on circumstantial indicia of their reliability.  Such indicia

21  abound in this case.

22           a.   **The Bank Records Are Admissible Under Rule 807**

23       The Greek bank records fall within the residual hearsay

24  exception in Federal Rule of Evidence 807.  That rule provides that

25       Under the following circumstances, a hearsay statement is
         not excluded by the rule against hearsay even if the
26       statement is not specifically covered by a hearsay
         exception under Rule 803 or 804: (1) the statement has
27       equivalent circumstantial guarantees of trustworthiness;
         (2) it is offered as evidence of a material fact; (3) it is
28       more probative on the point for which it is offered than

                                    14

1      any other evidence that the proponent can obtain through
2      reasonable efforts; and (4) admitting it will best serve
       the purposes of these rules and the interests of justice.

3      Rule 807 facilitates "the admission of needed, relevant,

4 reliable evidence which does not conform to a class exception." FTC

5 v. Figgie Int'l, 994 F.2d 595, 608 (9th Cir. 1993).  It exists to

6 provide judges a "fair degree of latitude" and "flexibility" to admit

7 statements that would otherwise be hearsay.  United States v. Valdez-

8 Soto, 31 F.3d 1467, 1471 (9th Cir. 1994).  A court's most important

9 inquiry under this rule is whether the proffered evidence has

10 trustworthiness equivalent to that of the enumerated hearsay

11 exceptions.  Larez v. City of Los Angeles, 946 F.2d 630, 642 (9th

12 Cir. 1991).

13      The Greek bank records meet each of the Rule 807 requirements.

14 First, the records have substantial circumstantial guarantees of

15 trustworthiness.  Foreign banks produced them to the Greek

16 authorities, which had, in turn, solicited them in response to the

17 U.S. government's request under a bilateral treaty.  The banks had no

18 motive to fabricate or alter the documents, or to produce them

19 selectively; on the contrary, they had good reason to provide their

20 governing authority with accurate and complete records.  Moreover,

21 the records were essentially contemporaneous: they were dated 2006

22 and 2007, when the transactions at issue took place.  The nature of

23 the documents is also telling: they are ordinary account records that

24 would naturally be made and maintained in the ordinary course of a

25 bank's business, rather than reports or other items prepared in

26 anticipation of litigation or investigation.  Further, these foreign

27 bank documents were shown to defendant during an IRS interview, and

28 he confirmed his signature on the signature cards was his.  In short,

15

the features and provenance of the documents establish their inherent reliability.

Second, the records are offered as evidence of material facts regarding the charged offenses.  Defendant's transfer of funds to the offshore accounts of an offshore company at Marfin Bank and Aspis Bank, then back to U.S. accounts in another person's name for use in purchasing property in the offshore company's name, is an essential part of the charged tax evasion scheme.  It also proves that statements he made to IRS agents in 2011 were false.

Third, the records are more probative as to the points for which they are offered than any other reasonably available evidence.  The records trace the monies transferred to the Greek accounts from the refinancing and sale of the Lake Forest properties.  They show that the monies went to accounts that he controlled, a portion of which he then used for personal expenses.  In other words, they show that defendant had money to pay the taxes owed.  Moreover, these records contradict a filing that defendant made to the IRS.  In an IRS filing asking for a listing of accounts that he controlled, defendant did not list these foreign accounts.  These documents show that he was in control of accounts at that time, directly contradicting his earlier representation.

Fourth, admission of the records will serve the purposes of the Federal Rules of Evidence and the interest of justice.  As stated in Rule 102, the rules should be construed "so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."  Here, the records, which are reliable, probative and material, will contribute greatly

to uncovering the truth regarding defendant's transfer of funds and statements to investigators.  Their admission under Rule 807 will eliminate the expense and delay that would be involved in attempting to locate and obtain testimony from former officials of the relevant Greek banks who were custodians of record in 2006 and 2007.[1]

### b. The Bank Records Are Admissible Under Rule 901

The Greek bank records can be authenticated under Federal Rule of Evidence 901.  Subsection (a) of that rule provides that

> To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

Subsection (b) provides a non-exhaustive set of examples of evidence that satisfies the requirements of the rule.  Among those examples is one listed in subsection (b)(4), which provides that an item can be authenticated by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  The Advisory Committee's Note to Rule 901(b)(4) states that "the characteristics of the offered item itself, considered in the light of circumstances, afford authentication techniques in great variety."  Thus, under 901(b)(4), "documents . . . could be authenticated by review of their contents if they appear to be sufficiently genuine." Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 533 (9th Cir. 2011) (citing Orr v. Bank of Am., 285 F.3d 768, 778 n.24 (9th Cir. 2002)).  For example, the Advisory

---

[1] Rule 807 includes a notice provision.  It says, "The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it."  The government provided such notice to defense counsel.

Committee's Note states that "a letter may be authenticated by content and circumstances indicating it was in reply to a duly authenticated one."

The government has met the requirements of Rule 901. Among other things, defendant's daughter sent the proceeds of the refinance loans from her Comerica bank account to the Marfin bank account; S.M. received transfers from these accounts from both the Marfin and Aspis account into her personal bank account; and defendant confirmed during this IRS interview that he was the signatory on these foreign bank accounts. Moreover, Marfin and Aspis are also referenced in escrow documents involving defendant. This evidence comprises substantial evidence that the Greek bank records are what the government says they are.

With regard to subsection (b)(4), the appearance and contents of the records are consistent with that typically found in bank account opening documents, account statements, and transfer records. The circumstances of the government's receipt of the documents are also reassuring, as the documents were produced to the government via a counterpart government's regulator, were obtained from a regulated entity with no obvious motive to fabricate them, and were provided via a bilateral treaty. The Court should thus exercise its broad discretion to admit the documents.

**F.  Cross-Examination of Defendant**

The scope of a cross-examination is within the discretion of the trial court. Fed. R. Evid. 611(b).

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during cross-examination. A defendant has no right to avoid cross-

examination on matters that call into question his claim of innocence.  United States v. Mehrmanesh, 682 F.2d 1303, 1310 (9th Cir. 1982); United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

A defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined on matters made relevant by his direct testimony.  Black, 767 F.2d at 1341.  The scope of the defendant's waiver is co-extensive with the scope of relevant cross-examination.  The extent of the waiver is determined by whether the question reasonably relates to subjects covered by defendant's direct testimony.  United States v. Hearst, 563 F.2d 1331, 1340 (9th Cir. 1977).

A defendant's credibility is crucial if the defendant chooses to testify in order to refute the government's showing of knowledge and intent.  Indeed, because a defendant is the only witness with "direct" evidence of his or her own knowledge and intent, if defendant here takes the stand to deny any intent to evade taxes or make false statements, his credibility becomes a key issue. Accordingly, cross-examination of the defendant about other fraudulent conduct in which he has engaged is necessary for the jury to weigh whether defendant's denial of knowledge and intent to defraud is credible given his other actions.  As the Ninth Circuit has held, Rule 608(b) "specifically contemplates inquiries into prior behavior in order to challenge a witness's credibility.  Evidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness."  United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).

**G.   Cross-Examination of Any Character Witnesses**

As a general rule, any character witnesses called by the defendant may not testify about specific acts demonstrating a particular trait or other information acquired only by personal observation and interaction with the defendant; the witness must be limited to summarizing the reputation of the defendant as known in the community.  See Michelson v. United States, 335 U.S. 469, 477 (1948); United States v. Hedcorth, 873 F.2d 1307, 1313 (9th Cir. 1989).

On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue. See Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests.  Michelson, 335 U.S. at 477.  The only prerequisite to such inquiries into specific instances of conduct is that there be a good faith basis that the incidents inquired about be relevant to the character trait at issue. United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).  The government may also call contradictory witnesses to testify as to defendant's negative reputation in the community.  Michelson, 335 U.S. at 479.

## VI.   MOTIONS

The Court has ruled on a number of pretrial motions.  (CR 68.)[2] It appears that one motion remains pending – the government's motion in limine to exclude defendant's proposed expert, Carl Knudson.  (CR

---

[2] "CR" refers to the Clerk's Record and is followed by the applicable docket control number.

20

53.)  On that motion, the Court stated as follows: "The Court
withholds ruling until trial.  At the parties' request, the Court may
hold a mini-hearing on the issue."  (CR 68.)  To the extent that
defendant seeks to call Mr. Knudson, the Court should grant the
government's motion for the reasons set forth in its opening and
reply briefs.  (CR 53, 61.)

But there is another reason to grant the government's motion:
the question at the heart of Mr. Knudson's expected testimony –
whether defendant owed taxes in 1999 – has been answered by defendant
himself: he does.  Defendant has repeatedly affirmed – under penalty
of perjury – that he owes some amount of taxes for the year 1999.
Sometimes, defendant agreed with the very tax assessment made by the
IRS; at other times, he disagreed with the precise amount of the
assessment.  But at all times, he averred that he owed taxes.  And
that is all that is needed to prove the existence of a tax deficiency
under 26 U.S.C. § 7201.  Whether the tax assessment is more or less
than the amount charged in the first superseding indictment makes no
legal difference.  United States v. Johnson, 319 U.S. 503, 517–18
(1943); see also, e.g., United States v. Citron, 783 F.2d 307, 314–15
(2d Cir. 1986); United States v. Burdick, 221 F.2d 932, 933–34 (3d
Cir. 1955).

Indeed, the government need not even prove-up a tax assessment.
"Although a prior valid assessment may be used to show a tax
deficiency under section 7201," the Ninth Circuit has said, "it is
not required to show that deficiency."  Voorhies, 658 F.2d at 714–15.
Thus, to the extent that defendant intends to call Mr. Knudson to
take issue with the tax assessment performed by the IRS, defendant's
attack would miss the mark.

21

In short, Mr. Knudson's expected testimony would be not only irrelevant and needlessly time consuming but, in all likelihood, confusing and misleading.  The Court should exclude such testimony.

**VII.   <u>CONCLUSION</u>**

The government reserves the right to file any such additional memoranda as may become appropriate during the course of the trial.


DATED: October 6, 2016          EILEEN M. DECKER
                                United States Attorney

                                DENNISE D. WILLETT
                                Assistant United States Attorney
                                Chief, Santa Ana Office


                                   _/s/_____
                                GREGORY W. STAPLES
                                DANIEL H. AHN
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

22